IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JESSE MENDIOLA,           )
                          )
    Plaintiff,             )
                          )   No. 3:15-cv-00995
v.                        )   Senior Judge Haynes
                          )
SOCIAL SECURITY ADMINISTRATION, )
                          )
    Defendant.             )

**MEMORANDUM**

Plaintiff, Jesse Mendiola, filed this action under 42 U.S.C. §§ 405(g) and 1383(c) against the Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security, seeking judicial review of the Commissioner's decision denying Plaintiff's applications for disability benefits and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, Plaintiff protectively filed his applications for disability insurance benefits under Title II, and for SSI under Title XVI, asserting a disability due to: "Knee injury; back injury; high blood pressure; lung restrictions' arthritis; shortness of breath; stress; depression; stomach ulcers; heart murmur" with an onset date of August 26, 2011. (Docket Entry No. 11, Administrative Record, at 216, 241). Plaintiff's applications were denied and Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 175-77.

After an evidentiary hearing, the ALJ found that Plaintiff was not under a "disability" as defined in the Act. Id. at 11-34. In essence, the ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 26, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

                                                            \*    \*    \*

3. The claimant has the following severe combination of impairments: degenerative joint disease, osteoarthritis of the right knee, carpal tunnel syndrome; mild degenerative changes of the lumbar spine; adjustment disorder; depressive disorder; and alcohol dependence (20 CFR 404.1520© and 416. 920(c)).

                                                            \*    \*    \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

                                                            \*    \*    \*

5. After careful consideration of the entire records, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can frequently handle and finger; occasionally climb, balance, stoop, kneel, crouch and crawl; should avoid concentrated exposure to fumes; is able to understand, remember and carry out one to three step, simple and detailed instructions and tasks; able to interaction [sic] with the public within the scope of performing simple tasks; able to perform object-oriented tasks; and able to adapt to infrequent workplace change.

                                                            \*    \*    \*

6. The claimant is capable of performing past relevant work as an assembler and inspector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

                                                            \*    \*    \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 26, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Id. at 16-18, 27. The Appeals Council denied Plaintiff's request for review. Id. at 1-6.

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 15), contending, in sum: (1) that the ALJ erred in weighing the opinion of a consultative examiner; (2) that the ALJ inappropriately deferred to the opinions of non-examining physicians over Plaintiff's examining physician's opinion on Plaintiff's residual functional capacity ("RFC") and failed to include the limitations on Plaintiff's RFC set by state medical consultants to whom the ALJ deferred; (3) that the ALJ erred in his evaluation of Plaintiff's Global Assessment Function ("GAF") score; and (4) that the ALJ failed to conduct a function-by-function analysis required by SSR 96-8p for Plaintiff's RFC.

### A. Review of the Record

Plaintiff, a veteran, receives 20% service-connected disability benefits from the Veteran's Administration due to limited flexion of his right knee. Id. at 472. For his relevant medical history, Plaintiff cites that he has been diagnosed as having lumbosacral radiculopathy, right remoral cutaneous neuropathy, hypertension, alcohol use, mild restrictive lung disease, depression, GERD, and dyspnea. Id. at 414, 418, 460, 653. Plaintiff experiences numbness of the lower extremities due to neuropathy. Id. at 437.

On October 24, 2007, an x-ray of Plaintiff's right knee showed osteochondroma of the right knee. Plaintiff has had two prior surgeries on his knee. Id. at 417. A subsequent x-ray showed osteophytes at the patella and tibial; enthesopathic changes; and deformity at the distal femur. Id. at 443. On December 30, 2008, an MRI of Plaintiff's lumbar spine revealed degenerative changes at L4-5 and L5-S1; and right paramedian disc bulging at L4-5. Id. at 365.

On October 26, 2009, Dr. Kishin Gehi, a consultant, examined Plaintiff and found chronic low back pain probably secondary to arthritis; right knee pain probably secondary to arthritis; history

3

of right knee surgeries; and pain in wrist probably secondary to carpal tunnel syndrome. Id. at 472.

On July 29, 2010, Dr. Horace Edwards performed a mental RFC assessment and listed marked limitations in the ability to respond appropriately to the general public. Id. at 789. In his written remarks, Dr. Edwards observed that Plaintiff "[c]annot deal with the general public," but "[h]as the ability to relate appropriately with peers and supervisors and maintain appropriate social behaviors but will do better dealing with things rather than people." Id. at 790. In Dr. Edwards's opinion, Plaintiff "[h]as the ability to sustain attention and concentration for periods of at least two hours in a typical 8 hour day" and "[c]an adaot to infrequent workplace changes." Id. In addition, Plaintiff can follow "one, two, and three step instructions." Id.

On August 16, 2010, Dr. Albert Gomez examined Plaintiff. Id. at 792-94, 851-53. Dr. Gomez's first examination revealed multiple joint pains, degenerative joint disease, carpel tunnel syndrome, and alcohol abuse. Id. at 794.

On November 19, 2010, Dr. Frank R. Pennington, a consultant, conducted a physical RFC assessment that showed limited handling and fingering. Id. at 844.

On February 7, 2012, a lumbar x-ray showed degenerative changes. Id. at 881. On February 13, 2012, Dr. Gomez's second examination also found chronic low back pain and chronic knee pain. Id. at 853. At the second examination, Dr. Gomez opined that Plaintiff could occasionally lift 20 pounds in an 8 hour workday and could sit for 6 hours in an 8 hour workday with regular breaks. Id.

On October 13, 2009, Dr. Robert Summerlin performed a psychological examination as a consultant and opined that Plaintiff had an "Adjustment Disorder with Mixed Anxiety and Depressed Mood" but Plaintiff would not be precluded from gainful employment. Id. at 469-70. On March 26,

2012, Dr. Karla McQuain, a psychiatrist, performed a clinical examination and mental status examination as well as a records review. Id. at 884-88. Dr. McQuain noted that Plaintiff's psychiatric state was "irritable and angry" and assigned marked limitations in social relating and his ability to adapt to change. Id. at 887.

The ALJ found that Plaintiff had several severe impairments: "degenerative joint disease, osteoarthritis of the right knee, carpal tunnel syndrome; mild degenerative changes of the lumbar spine; adjustment disorder; depressive disorder; and alcohol dependence ." Id. at 16. The ALJ, however, concluded that Plaintiff's impairments, alone or in combination, did not satisfy the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 17. The ALJ determined that Plaintiff retained the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can frequently handle and finger; occasionally climb, balance, stoop, kneel, crouch and crawl; should avoid concentrated exposure to fumes; is able to understand, remember and carry out one to three step, simple and detailed instructions and tasks; able to interaction [sic] with the public within the scope of performing simple tasks; able to perform object-oriented tasks; and able to adapt to infrequent workplace change.

Id. at 18. The ALJ found that, despite Plaintiff's impairments, Plaintiff could perform his prior work as an assembler and inspector. Id. at 27.

### B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based upon the entire record in the

administrative hearing process. Jones v. Sec'y, Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). Judicial review is limited to a determination of whether substantial evidence exists in the record to support the Commissioner's decision, and whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the ALJ's decision must stand, if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Plaintiff's first claim is that the ALJ failed to provide a sufficient rationale for the weight given to the opinion of Dr. McQuain, a consultant who examined Plaintiff. Dr. McQuain opined that Plaintiff seemed to function in the "average" range of intellectual functioning, with some memory impairment. (Docket Entry No. 11, Administrative Record, at 887). At that examination, Plaintiff exhibited irritability and anger that Dr. McQuain deemed "evidence of a marked impairment in social relating ... [and] ability to adapt to change." Id. Yet, Dr. McQuain also opined that with his work history, Plaintiff could follow directions and could handle his finances. Id. The State psychological consultants determined Plaintiff had a mild to moderate limitation in his functioning and the ALJ gave them "great weight." Id. at 26. The most recent mental health assessment was by Dr. Larry McNeill, M.D., on August 22, 2012, who cited Dr. McQuain's reliance on Plaintiff's subjective complaints and description of his symptoms. Id. at 139.

As to the ALJ's evaluation of expert medical opinion, the SSA has three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1502, 416.902. A treating source has a history of medical treatment and an ongoing treatment relationship with the plaintiff consistent with accepted medical practice. 20 C.F.R. §§ 404.1502, 416.902. An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship. Id. A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records. Id.

Dr. McQuain was a consultant and under 20 C.F.R. § 404.1527, opinions by consulting or non-treating doctors are not treated as opinions of treating physicians. See Rudd v. Comm'r of Soc. Sec., 531 F.App'x 719, 730 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527 and Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994)). The ALJ is not required to give "good reasons" for the weight assigned to the non-treating and examining consultants as "this requirement only applies to treating sources." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010) (citing Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007)); SSR 96-2p.

Dr. McQuain found that Plaintiff had "marked" limitations in social functioning. The ALJ noted that Dr. McQuain was unaware of Plaintiff's work as a maintenance man, and assigned great weight to the State non-examining doctors' opinions, on Plaintiff's social functioning in a work setting. (Docket Entry No. 11, Administrative Record, at 26). To be sure, the ALJ did not assign a specific "weight" to Dr. McQuain's opinion. The ALJ, however, gave "great" weight to the State doctors' opinions, giving rise to the reasonable inference that Dr. McQuain's opinion was given less weight. (Docket Entry No. 11, Administrative Record, at 26). In any event, "[t]hough SSR 96–2p

provides that the ALJ must be sufficiently specific as to the weight he accords a treating source opinion and the reasons for that weight, an ALJ's failure to explicitly state the weight he accords does not always constitute reversible error." Kepke v. Comm't of Soc. Sec., 636 F.App'x 625, 630 (6th Cir. 2016) (citing Bass v. McMahon, 499 F.3d 506, 510-11 (6th Cir. 2007)).

It is undisputed that the ALJ correctly stated that Dr. McQuain had not considered Plaintiff's work history. (Docket Entry No. 11, Administrative Record, at 26). Plaintiff worked part time as a maintenance worker in his apartment complex. Id. at 16-17, 23, 25. "Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion." Kepke, 636 F.App'x at 629 (citing Francis v. Comm'r of Soc. Sec. Admin., 414 F.App'x 802, 804 (6th Cir. 2011)). Moreover, an individual's work during a period of his alleged disability is a relevant and permissible consideration. See Miller v. Comm'r of Soc. Sec., 524 F.App'x 191, 194 (6th Cir. 2013) ("[T]he ALJ did not err by considering [the claimant's] ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.") (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971).

The ALJ found Plaintiff able to interact with the public only in performing simple tasks and with infrequent change in his workplace. (Docket Entry No. 11, Administrative Record, at 18). This recognition reflects that the ALJ gave some credit to Plaintiff's limitations. See Poe v. Comm'r of Soc. Sec., 342 F.App'x 149, 157 n.4 (6th Cir. 2009) ("[A]lthough the ALJ did not give Dr. Boyd's opinion controlling weight, the ALJ's residual functional capacity finding did incorporate the limitations that were consistent with the other evidence of record, including the findings of [the claimant's] other treating physicians."). The Court concludes that the ALJ had a reasonable basis to not give Dr. McQuain's opinion controlling or great weight.

The ALJ, however, is permitted to give "great" weight to non-examining sources' opinions if the evidence shows that Plaintiff's allegations of mental health impairments were not fully credible. Plaintiff stated that he stopped work after his job was discontinued. (Docket Entry No. 11, Administrative Record, at 306). An individual who leaves the last job for reasons unrelated to any disability casts doubt on the reasons they are not working. See Workman v. Comm'r of Soc. Sec., 105 F.App'x 794, 801 (6th Cir. 2004) ("Although [the claimant] alleges a disability onset date of June 30, 1998, the record indicates that this is the date that [the claimant's] employer laid him off due to economic reasons."). The most recent mental health treatment note cited is a December 4, 2013 note from a nurse practitioner that Plaintiff had some "mild distress" with an anxious mood, but "no current evidence of psychosis." (Docket Entry No. 11, Administrative Record, at 18). This claim lacks merit.

Plaintiff's next claim is that a State agency doctor opined Plaintiff had a "marked" limitations in his ability to interact with the general public, but other doctors opined that Plaintiff could not interact in a work environment with simple tasks. The vocational expert testified that Plaintiff's past work as an assembler or inspector packer is such a position. Id. at 65. The jobs identified by the vocational expert do not directly require any public contact. See Assembler, Dictionary of Occupational Titles (DOT) # 706.684-022, and Inspector, DOT # 789.587-014, U.S. Dep't of Labor, DOT (4th Ed. 1991), available at http://www.oalj.dol.gov/LIBDOT.HTM.

Plaintiff's next claim is that the ALJ did not adopt all of the RFC limitations set by the State doctors. The ALJ can give a non-consultant's opinion "great" weight, but is not required to adopt the opinion in its entirety. Reeves v. Comm'r of Soc. Sec., 618 F.App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides "great weight" to an opinion, there is no requirement that an ALJ

adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") (citing Harris v. Comm'r of Soc. Sec. Admin., No. 1:13-cv-00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)). Where, as here, the ALJ's RFC determination considered the entire record, the ALJ is not required to adopt any particular opinion completely. See Justice v. Comm't of Soc. Sec., 515 F.App'x 583, 587 (6th Cir. 2013) ("The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject. Contrary to [the claimant's] contention, the ALJ had the authority to make these determinations.").

As to Plaintiff's claim that the ALJ erred in evaluating Plaintiff's GAF scores, the ALJ acknowledged Plaintiff's GAF scores including a score of 55 that was consistent with Plaintiff's treatment records and given significant weight. (Docket Entry No. 11, Administrative Record, at 24). "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." Konecky v. Comm'r of Soc. Sec., 167 F.App'x 496, 503 n.7 (6th Cir. 2006). GAF scores assist in assessing a claimant's mental RFC, but are not controlling. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (noting that a GAF score "is not essential to the RFC's accuracy"). The Sixth Circuit considers GAF scores on a case-by-case basis. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 836 (6th Cir. 2016) (compiling interpretations of the importance of GAF scores in several cases). Here, considering all the proof, the ALJ found Plaintiff's score to reflect a moderate level of limitation. (Docket Entry No. 11, Administrative Record, at 24). Given Plaintiff's actual work history and the medical proof, this finding is supported by substantial evidence. Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM–13066 REV (Oct. 14, 2014).

Plaintiff's final claim is that the ALJ failed to conduct a proper RFC evaluation. Plaintiff cites the "function-by-function" evaluation of impairment in 20 C.F.R. §§ 404.1545, 416.945. SSA regulations provide that the ALJ will "assess [the claimant's] residual functional capacity based on all the relevant evidence in [the claimant's] case record." Id. "Residual functional capacity is an 'assessment of [the claimant's] remaining capacity for work,' once her limitations have been considered." Stankoski v. Astrue, 532 F.App'x 614, 619 (6th Cir. 2013) (quoting 20 C.F.R. § 416.945(a)). SSR 96-8p states that the RFC assessment must identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. Thus, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Further, the ALJ "must discuss the individual's ability to perform sustained work activities" and "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."

Yet, the Sixth Circuit does not require the ALJ to discuss each capacity for which a limitation is not alleged. Delgado v. Comm'r of Soc. Sec., 30 F.App'x 542, 547 (6th Cir. 2002). Further, "[a]lthough a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing," as there is a difference " between what an ALJ must consider and what an ALJ must discuss in a written opinion." Id. at 547-48 (internal citations and quotation marks omitted). If an ALJ specifies the claimant's exertional and non-exertional abilities and discusses the limitations at issue, he or she complies with SSR 96-8p. Winslow v. Comm'r of Soc. Sec., 566 F.App'x 418, 421 (6th Cir. 2014) (citing Rudd, 531 F.App'x at 729); Delgado, 30 F.App'x at 547-48. Based upon Sixth Circuit decisions, the Court concludes that the ALJ's RFC

analysis was proper.

For these reasons, the Court concludes that the Plaintiff's motion for judgment on the administrative record (Docket Entry No. 15) should be denied and the Commissioner's decision affirmed.

An appropriate Order is filed herewith.

**ENTERED** this the 29th day of September, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge